# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| JOHN G. WEBB,<br><br>Plaintiff,<br><br>v.<br><br>POTOMAC ELECTRIC POWER COMPANY,<br><br>Defendant. | Civil Action No. TDC-18-3303 |

## MEMORANDUM OPINION

Plaintiff John G. Webb has filed suit against Defendant Potomac Electric Power Company ("PEPCO"), alleging that he was subjected to race and age discrimination while employed by PEPCO from 2009 to 2017, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17 (2018), and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634 (2018), and that this misconduct also breached implied contractual obligations found in PEPCO's equal employment opportunity ("EEO") policies. Presently pending before the Court is PEPCO's Motion to Dismiss or in the Alternative Summary Judgment. The Court has reviewed the submitted materials and held a hearing on the Motion on February 26, 2020. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

For purposes of resolving the Motion, the Court accepts the facts asserted in Webb's Amended Complaint as true. Webb is an African American man who was born in December 1965. He has been employed by PEPCO in the Vehicle Resource Management Department ("the VRM")

since 1986 and was promoted at various times over the years until reaching the position of Automotive Mechanic A, Grade 16.

In 2009, PEPCO supplemented its existing collective bargaining agreement ("the CBA") with Webb's union, Local 1900 of the International Brotherhood of Electrical Workers ("the Union"), by adding a new employment policy, "Attachment W." Am. Compl. ¶¶ 18-19, ECF No. 12. The purpose of implementing the policy was ostensibly to ensure that mechanics had the appropriate skills to service PEPCO vehicles' evolving computerized control systems. The intended and practical effect of the policy change was to create a "two-track job structure" by introducing Fleet Technician as an occupational category distinct from the Automotive Mechanic category. *Id.* ¶ 21. In order to become a Fleet Technician, VRM employees first had to complete an ASE Certification Program, including a written test. Automotive Mechanics tended to be over 40 years old and were generally older than the Fleet Technicians.

According to Webb, working as an Automotive Mechanic placed him in a disadvantageous position compared to Fleet Technicians, even though the roles were similarly situated and involved performing essentially the same duties. For example, it was accepted policy and practice to assign opportunities to accrue overtime pay only to Fleet Technicians; Fleet Technicians were selected to serve in temporary "Lead" positions over Automotive Mechanics, even if the Automotive Mechanics had seniority in terms of years of service and work experience, *id.* part I, ¶ 9; and Automotive Mechanics in pay grades 16 and 17 were placed on a "restricted roster," which froze them at their current rank and made them ineligible for further advancement within the VRM, *id.* part I, ¶ 10. Thus, at Automotive Mechanic A, Grade 16, Webb had reached the highest non-competitive rank he could achieve under the CBA.

2

Between 2009 and 2017, Webb worked under the indirect supervision of Manager Harvey Nimmerichter. Webb alleges that Nimmerichter and other members of the VRM management team engaged in age discrimination contrary to PEPCO's EEO policies prohibiting discrimination and harassment in the workplace, including the policies of the company with which PEPCO merged in 2016, Exelon Corporation ("Exelon"). These practices included concerted efforts to force Automotive Mechanics to retire and the elimination of Automotive Mechanics' job slots if and when they retired. Nimmerichter also made blatantly discriminatory statements relating to age on "numerous occasions" during official events and in informal settings, such as telling the Automotive Mechanics that they were "on the last leg of the journey of life" and that they should "all look into retirement." *Id.* ¶ 22. Nimmerichter's personal antagonism toward Webb resulted in a physical altercation between the two men on September 16, 2014. As a result of the altercation, Webb suffered a torn rotator cuff which kept him on "disabled work status through and until January 2017." *Id.* ¶ 25.

On March 24, 2016, Webb filed a charge of age and race discrimination with the United States Equal Employment Commission ("EEOC"). On July 31, 2018, the EEOC issued a Dismissal and Notice of Rights in which it dismissed his complaint and granted him the right to sue PEPCO in court. On October 25, 2018, Webb filed his original Complaint against Exelon in this Court. Webb filed an Amended Complaint on April 15, 2019, in which he added PEPCO as a Defendant and asserted three causes of action: race discrimination in violation of Title VII (Count I); age discrimination in violation of the ADEA (Count II); and breach of implied contract (Count III). On May 3, 2019, Exelon Corporation was voluntarily dismissed from the action.

## DISCUSSION

In its Motion, PEPCO seeks dismissal of the Amended Complaint in its entirety or, in the alternative, summary judgment in its favor on all claims, on the grounds that Webb failed to exhaust administrative remedies, that his claims are time-barred, and that Webb has failed to allege sufficient facts to state a viable claim for relief. With its Motion, PEPCO has filed a "Joint Record" in support of summary judgment containing an affidavit from Karen Gentry-May, Principal Human Resources Business Partner for PEPCO, and Webb's March 24, 2016 EEOC charge of discrimination ("the EEOC Charge"). Joint Record ("J.R.") 001, 003, ECF No. 27.

### I.  Legal Standards

PEPCO seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). To defeat a motion dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). When deciding a motion to dismiss, courts may "take judicial notice of matters of public record" and may consider exhibits submitted with the motion "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Here, the Court will consider Webb's EEOC Charge, submitted with the Motion, as a document integral to the Amended Complaint because Webb referenced the EEOC Charge in the Amended Complaint and he has not objected to its authenticity.

Although a party may move for summary judgment before the commencement of discovery, *see* Fed. R. Civ. P. 56(b), "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). The proper procedure for asserting a need for discovery before a summary judgment ruling is to file an affidavit pursuant to Rule 56(d) explaining why the party needs discovery to establish the existence of a genuine issue of material fact. *Id.* If a party does not submit a Rule 56(d) affidavit, the Court may still consider a request for discovery presented in the non-movant's memorandum of law opposing summary judgment. *Id.* at 244-45.

While Webb has not filed a Rule 56(d) affidavit, in his memorandum in opposition to the Motion ("Opposition"), he requests an opportunity to engage in discovery to more fully develop facts about PEPCO's EEO policies and processes for remedying discrimination in the workplace. At the hearing on the Motion, Webb's counsel specified that he needs discovery to access the specific language of those EEO policies, which are directly relevant to his breach of implied contract claim. Because the proceedings before the Court are in the earliest stage, and Webb has articulated a persuasive reason that discovery is required before summary judgment could fairly be considered, the Court will construe the Motion as a Motion to Dismiss only and will not consider the evidence submitted by PEPCO other than the EEOC Charge. Fed. R. Civ. P. 12(b)(6), 12(d).

## II. Race Discrimination

In his Opposition, Webb has stated that he will voluntarily dismiss his race discrimination claim in Count I of the Amended Complaint. Therefore, the Motion to Dismiss will be denied as moot as to Count I.

## III. Age Discrimination

Webb alleges in Count II that between 2009 and 2017, PEPCO engaged in disparate treatment in opportunities for promotions, overtime, and wage increases based on age as a result of the favorable treatment of Fleet Technicians, who are mostly under 40 years old, and the unfavorable treatment of Automotive Mechanics, who are mostly over 40 years of age. Webb also asserts that during this time period, PEPCO subjected him to demeaning treatment by Nimmerichter and other VRM managers, including statements showing hostility to older workers, pressure to retire, and a physical altercation in September 2014.

### A. Exhaustion of Administrative Remedies

PEPCO argues that Webb has failed to exhaust administrative remedies on his age discrimination claim because his only EEOC charge of discrimination, filed on March 24, 2016, referenced one discrete act of discrimination consisting of PEPCO's denial, on March 14, 2014, of Webb's request for a "position step increase and equipment training course" and Nimmerichter's contemporaneous discriminatory statement that he "should look into retirement" because he was 51 years old. J.R. 003. PEPCO argues that to the extent that Webb is presently asserting an age-based hostile work environment claim, or an age discrimination claim based on other adverse employment actions, he has failed to exhaust remedies as to those claims.

Pursuant to the ADEA, employers may not "discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's age," and may not "limit, segregate, or classify . . . employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [one's] status as an employee because of such individual's age[.]" 29 U.S.C. § 623(a)(1), (a)(2).

Discrimination claims under the ADEA are subject to an administrative exhaustion requirement. *See* 29 U.S.C. § 626(d). The EEOC charge "defines the scope of [the plaintiff's] subsequent right to institute a civil suit." *See id.*; *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (citation omitted). If a plaintiff fails to include a claim in the EEOC charge, the plaintiff may later assert it in federal court only if it is "reasonably related to [the] EEOC charge and can be expected to follow from a reasonable administrative investigation." *Smith*, 202 F.3d at 247. Because the principal purpose of this exhaustion requirement is to place the defendant on notice of the alleged violations, if a defendant has adequate notice of a claim, the plaintiff should not be held to "overly technical" requirements that turn the exhaustion requirement into "a tripwire for hapless plaintiffs." *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593-94 (4th Cir. 2012).

The exhaustion requirement of Title VII, and by extension of the ADEA, is not jurisdictional. *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1846, 1849-51 (2019); *see also Johnson v. Silver Diner, Inc.*, No. PWG-18-3021, 2019 WL 3717784, at *2 (D. Md. Aug. 7, 2019) (considering the exhaustion requirements of both Title VII and the ADEA under Rule 12(b)(6)). Thus, the Court will analyze PEPCO's arguments about Webb's alleged failure to exhaust under Federal Rule of Civil Procedure 12(b)(6).

At the hearing on the Motion, Webb confirmed that he was not asserting a hostile work environment claim in the Amended Complaint. Rather, he is asserting that since the implementation of Attachment W, PEPCO has engaged in "disparate treatment in opportunities for promotions, overtime, and wage increases" based on age. Am. Compl. ¶ 33. Upon review of the EEOC Charge, the Court concludes that it is not fairly read to limit Webb's age discrimination claims to the March 14, 2014 incident. Webb checked the box for age discrimination on the EEOC Charge, and in the EEOC Charge he generally asserted that he suffered age discrimination relating

to "terms and conditions of employment and wage increase and training," J.R. 003, which corresponds to the disparate treatment claims in the Amended Complaint based on the preferential treatment Fleet Technicians received over more senior Automotive Mechanics in terms of wages and promotion potential pursuant to Attachment W. Webb also identified the dates of discrimination as ranging from March 14, 2014 to March 11, 2016, and he checked the box for "continuing action," thus signifying that he was alleging a series of incidents of disparate treatment, not a single incident on March 14, 2014. J.R. 003. Therefore, the Court finds that Webb's age discrimination claims, even if not identified in great detail in the EEOC Charge, were "reasonably related to [the] EEOC charge and could have been expected to follow from a reasonable administrative investigation." *Smith*, 202 F.3d at 247. Accordingly, the Court will deny the Motion as to PEPCO's argument that the age discrimination claims were not properly exhausted.

### B. Statute of Limitations

PEPCO also argues that even if properly identified in the EEOC Charge, Webb's age discrimination claims should be dismissed on statute of limitations grounds. Under the ADEA, as applicable here, an administrative charge of age discrimination must be filed "within 300 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1)(B); *Williams v. Giant Food, Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). Therefore, a claim for age discrimination based on activity occurring more than 300 days before the EEOC charge was filed is time-barred. 29 U.S.C. § 626(d)(1). Where Webb's EEOC Charge was filed on March 24, 2016, only claims that arose on or after May 28, 2015 would be timely. *See id.* Thus, PEPCO asserts that because Webb's age discrimination claim arose on May 14, 2014, it is time-barred.

8

In order to establish a *prima facie* case of disparate treatment, a plaintiff must demonstrate the following elements: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) disparate treatment as compared to similarly situated employees. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). A plaintiff need not strictly establish each of these elements in the complaint, but the complaint must provide sufficient factual allegations to support a plausible inference of discrimination. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-15 (2002). On the issue of statute of limitations, the operative event is the adverse employment action. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). An adverse employment action "is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007). Thus, for Webb's disparate treatment claim to proceed, an adverse employment action must have occurred on or after May 28, 2015.

It is undisputed that Attachment W, the policy that created the disparity between Fleet Technicians and Automotive Mechanics, was adopted in 2009 long before this 300-day period. In addition, the Amended Complaint fails to specifically identify any adverse employment action within the 300-day time period, such as a denial of a request by Webb to be transferred to the Fleet Technician position, or the denial of a particular wage increase or opportunity for overtime pay that was provided only to Fleet Technicians.

As discussed above, the EEOC exhaustion requirement and limitations periods are not jurisdictional, such that the 300-day rule is akin to a statute of limitations which PEPCO may assert as an affirmative defense. *See Davis*, 139 S. Ct. at 1850-51; *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990) (ruling that Title VII's then-30-day time limit to bring suit in court after receiving a right-to-sue letter was a statute of limitations subject to the rebuttable presumption of

equitable tolling, rather than a jurisdictional bar to suit). A claim may be dismissed on statute of limitations grounds only in "relatively rare circumstances" and only when the "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). Construed in the light most favorable to Webb, he has asserted disparate treatment based on age through a series of wage increases and overtime opportunities made available only to Fleet Technicians over an unspecified period of time, not just on March 14, 2014.

However, Webb has acknowledged in the Amended Complaint that he was "on disabled work status" from after the altercation with Nimmerichter on September 16, 2014 until January 2017. As Webb's counsel acknowledged at the hearing, this statement in the Amended Complaint is properly construed as admitting that, during that time period, Webb did not seek out and was not denied any transfers to the Fleet Technician position, or any wage increases or overtime opportunities made available only to Fleet Technician personnel. It is also is properly construed as acknowledging that he was not on the job site and therefore was not personally subjected to any age-based harassment during that time period. Thus, the Court finds that Webb's age discrimination claims could not possibly be based on any adverse employment actions occurring after the date his disabled work status began, such that they are facially barred by the statute of limitations as having occurred more than 300 days before the EEOC Charge was filed on March 24, 2016. *See Morgan*, 536 U.S. at 114 (stating that other than for a hostile work environment claim, "[e]ach incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice' that can be the subject of an EEOC charge only if filed within the 300-day period before the EEOC charge, such that acts occurring before that period "are untimely filed and

no longer actionable"). To the extent that the age discrimination claim could be based on missed wage increases or overtime assignments after Webb returned to work in January 2017 and before the CBA was amended to treat Automotive Mechanics on par with Fleet Technicians in December 2017, such a claim would also be time-barred as occurring outside the 300-day period before the 2016 EEOC Charge and unexhausted because it was necessarily unaddressed in the 2016 EEOC Charge.

Although Webb has noted in his Opposition that four of his similarly situated colleagues have asserted in a related civil action a hostile work environment claim arising from events within VRM between October 2015 and February 2016, the existence of that case does not create a timely age discrimination claim in this case. First, the briefs on a motion cannot be used to amend the complaint. *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) ("[The plaintiff] is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint."), *aff'd*, 141 F.3d 1162 (4th Cir. 1998). Moreover, whether other individuals were the victims of a hostile work environment at the VRM does not show that Webb, who was not present in the workplace during that time period, was the victim of such a hostile work environment during that 300-day period. Even if Webb were permitted to further amend his Complaint to add a hostile work environment claim, it would be time-barred because where Webb was on disabled work status and not on the job site from September 2014 to January 2017, there would have been no act of harassment occurring within 300 days before the EEOC Charge. *See Morgan*, 536 U.S. at 115 (finding that although a hostile work environment claim consists of a series of separate acts, it is timely when any one "act contributing to the claim occurs within the filing period"). As with the disparate treatment claims, any hostile work environment claim based on harassment occurring between January 2017 and December 2017 would also be time-barred as

occurring outside the 300-day period before the 2016 EEOC Charge and unexhausted because it was necessarily unaddressed in the 2016 EEOC Charge. *See Smith*, 202 F.3d at 247.

In finding the age discrimination claims time-barred, the Court acknowledges Webb's argument that the reason no adverse employment actions occurred within 300 days of the EEOC Charge is that he was on disabled work status as a result of a physical injury caused by Nimmerichter that he asserts was part of the age discrimination against him. However, Webb has not explained why he did not or could not have filed a timely EEOC charge within 300 days of that incident, during the period of his disability leave. Accordingly, the Court cannot reasonably apply equitable tolling to his claim. *See Irwin*, 498 U.S. at 95-96 (finding that a Title VII timing requirement was subject to equitable tolling); *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001) (stating that equitable tolling is appropriate where "extraordinary circumstances beyond [the plaintiff's] control prevented [him] from complying with the statutory time limit"); *Stamper v. Duval Cty. Sch. Bd.*, 863 F.3d 1336, 1342 (11th Cir. 2017) (stating that in a Title VII case, "[e]quitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond [the movant's] control and unavoidable even with diligence.").

The Court will therefore grant the Motion to Dismiss the age discrimination claims under the ADEA alleged in Count II of the Amended Complaint.

### IV. Breach of Implied Contract

PEPCO seeks dismissal of the breach of implied contract claim in Count III on the grounds that Maryland law does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing, and even if Webb had alleged a proper factual basis for an implied contract claim, such a claim is barred by Maryland's three-year statute of limitations for civil actions. Md. Code Ann., Cts. & Jud. Proc. § 5-101 (2013).

PEPCO's arguments as to the implied covenant of good faith and fair dealing are not relevant where Count III does not assert such a claim. Rather, in Count III, Webb alleges that PEPCO has breached an implied contract for fair and equitable treatment derived from its EEO policies upon which Webb relied from 2009 to 2017. To establish a breach of contract under Maryland law, a plaintiff must prove "that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). "An implied contract is an agreement which legitimately can be inferred from the intention of the parties as evidenced by the circumstances and the ordinary course of dealing and the common understanding of men." *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 606 (Md. 2000) (citations omitted). Such contracts take two forms: (1) an implied contract by fact, which is a contract inferred from the conduct of the parties where one party renders services under circumstances indicating an expectation of payment and the other party knows of those circumstances and accepts the services, and (2) an implied contract by law, also called a quasi-contract, which exists when there is no contract but fairness dictates that the plaintiff receive compensation for services provided. *Id.* at 606 n.6. Although the Amended Complaint does not clearly identify the type of implied contract claim asserted, at the hearing, Webb's counsel clarified that Webb is asserting breach of contract implied by fact.

In the context of at-will employment, the Court of Special Appeals of Maryland stated in *Bender v. Suburban Hosp., Inc.*, 758 A.2d 1090, 1113 (Md. Ct. Spec. App. 2000), that there are instances when "employer policy statements, such as those found in handbooks and on applications," create enforceable contractual obligations "when, with knowledge of their existence, employees start or continue to work for the employer." *Id.*; *cf. Leyden v. Am. Accreditation Healthcare Comm'n*, 83 F. Supp. 3d 241, 247-248 (D.D.C. 2015) (denying a motion to dismiss a

breach of implied contract claim under District of Columbia law, where the plaintiff alleged that she was subjected to discrimination and retaliation in violation of implied contractual obligations contained in the company's whistleblower and grievance personnel policies encouraging the reporting of suspected misconduct and prohibiting retaliation). However, the *Bender* court "refused to find employment contracts" "where the employer's publication made only general statements of policy that could not be applied to specific employees," including anti-discrimination language such as text stating that privileges "shall be granted or denied without regard to" personal characteristics including sex, race, and national origin. *Id.* 1112-13. These categories of promises have been found to bind a party "only in the moral sense." *Id.* at 1113.

Here, the Amended Complaint alleges the existence of EEO policies prohibiting discrimination, including on the basis of age, and asserts that the disparate treatment of the Automotive Mechanics breached the terms of these policies. Although the specific provisions breached are not stated in detail, this omission does not warrant dismissal, particularly where Webb's counsel stated during the hearing that Webb was aware of the policies but lacks access to the specific policy documents and requires discovery in order to obtain them. Viewing the facts in the light most favorable to Webb, as the Court must at this stage of the proceedings, the Court finds that Webb has stated a claim for breach of implied contract by breaching policies that bar age discrimination. *See Bender*, 758 A.2d at 1113; *see also Dart Drug Corp. v. Corning Glass Works*, 480 F. Supp. 1091, 1098 n.10 (D. Md. 1979) ("Novel legal claims are particularly inappropriate for dismissal if, as here, the Court can infer the existence of facts comprising all of the required elements."). After discovery, when the precise nature of the EEO policies is established, the claim can be reevaluated. *See Dart Drug Corp.*, 480 F. Supp. at 1098 n.10 ("A

proper test for [a novel] claim is a motion for summary judgment after discovery sufficient to uncover relevant facts has been completed").

Finally, the Court cannot dismiss this claim on statute of limitations grounds. In Maryland, a three-year statute of limitations applies to civil claims. Md. Code Ann., Cts. & Jud. Proc. § 5-101. Where Webb has alleged disparate treatment from 2009 to 2017 consisting of the denial of wage increases and overtime opportunities based on age, and he was on the job from January 2017 until revocation of the allegedly discriminatory policies in Attachment W in December 2017, the Amended Complaint can reasonably be construed to assert an adverse employment action during 2017, within three years of the filing of the original Complaint on October 25, 2018. Thus, because the breach of implied contract claim is not time-barred on the face of the Amended Complaint, the Court will deny the Motion to Dismiss as to Count III of the Amended Complaint.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be GRANTED IN PART and DENIED IN PART. The Motion will be granted as to Count II of the Amended Complaint (age discrimination) and denied as moot as to Count I (race discrimination). Counts I and II will be dismissed. The Motion will be denied as to Count III (breach of implied contract). A separate Order shall issue.

Date: March 6, 2020

THEODORE D. CHUANG
United States District Judge